146 N.J. Super. 63 (1976)
368 A.2d 973
NATIONAL SPRING CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
PIERPONT ASSOCIATES, INC., ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
THE JERSEY CITY FIRE DEPARTMENT, THOMAS G. TAYLOR, FRANK NUKRUSCZ AND CITY OF JERSEY CITY, THIRD-PARTY DEFENDANTS. AKZONA, INC., ET AL., PLAINTIFFS,
v.
PIERPONT ASSOCIATES, INC., ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
THE JERSEY CITY FIRE DEPARTMENT, THOMAS G. TAYLOR, FRANK NUKRUSCZ AND CITY OF JERSEY CITY, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 18, 1976.
*64 Mr. Jeffrey M. Kadish for defendant and Third-Party plaintiff F & J Paper Storage Corp. (Messrs. Morgan, Melhuish, Monaghan and Spielvogel, attorneys).
*65 Mr. Paul W. Mackey for third-party Defendant Jersey City (Mr. Dennis L. McGill, attorney).
BILDER, J.S.C.
This is a motion by the City of Jersey City to dismiss a third-party complaint on the ground that the city has immunity under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. The basic action, which arises out of a fire loss, combines the uninsured loss of plaintiff and the subrogation claim of its insurance company.
A fire which occurred in a 20-building industrial complex on January 4, 1975 resulted in the destruction of property and interruption of business of National Spring Co., Inc., one of the tenants. The damage was sufficiently serious to require National to relocate its business of repairing and replacing automotive suspension systems to a new location.
It is National's contention that the fire did not originally involve the building wherein it was located but that the fire spread to and consumed its premises because of dangerous and inflammable conditions negligently created or permitted to continue by the owners of the complex and other tenants.
F&J Paper Storage Corp. conducted a waste paper and refuse business as a tenant in other premises within the complex. It has been charged with negligently contributing to the spread of the fire by storing baled waste paper within its premises, in violation of a Jersey City ordinance.
In December 1974, the month before the fire, members of the Jersey City Fire Department inspected a warehouse in the complex and observed that baled paper was stored throughout that building, in violation of a Jersey City ordinance. It was here that F&J was storing the baled paper which gives rise to the plaintiff's complaint. Nothing was done with respect to this apparent violation other than notifying the landlord and taking steps to identify the tenants who were thus violating the ordinance.
F&J has brought a third-party complaint against the city and its inspectors for failure to take active steps to *66 cause the paper to be removed and the violation to be eliminated.[1]
Third party plaintiff eschews any notion it seeks to recover against the city for failure to enforce the ordinance or for making an inadequate or negligent inspection of property. As to the former, such a claim is clearly barred by N.J.S.A. 59:2-4, and as to the latter, it is clearly barred by N.J.S.A. 59:2-6. Rather, liability is predicated on a negligent failure to carry out a ministerial function, a claim which third-party plaintiff asserts is recognized by N.J.S.A. 59:2-3(d), citing Wuethrich v. Delia, 134 N.J. Super. 400 (Law Div. 1975).
Third-party plaintiff argues that under Wuethrich, and Bergen v. Koppenal, 52 N.J. 478 (1968), its pre-act precursor, a municipality can be liable for acts or omissions of a low-level discretionary or ministerial nature. It seeks to extrapolate from these two cases the concept that where a municipality has notice of a dangerous condition it has a ministerial duty to investigate and, semble, take steps to rectify the condition. Thus in the instant case third-party plaintiff contends that the City had notice of the storage of the paper and had a ministerial duty to take steps to abate the dangerous condition, for failure of which liability ensues for the resultant injury.
In Koppenal a township officer noted that an overhead traffic light on a state highway had broken loose and turned, so that its signal was misdirected. The township did nothing more than notify the State Highway Department when its office opened a few hours later. Before the dangerous condition was rectified a collision occurred, and a claim was *67 asserted against the township for failure to act to protect the public until the State could take action. The trial court had dismissed the claim for failure to state a cause of action. In affirming the Appellate Division's reversal, the Supreme Court said:
* * * we think it fair to say that a duty may be found if a police officer learns of an emergent road condition which is likely not to be observed by a motorist and which holds an unusual risk of injury. In such circumstances the municipality must act reasonably to guard the traveler until the appropriate authority, here the State's own agencies, can take over. In such an inquiry, the municipality may prove the police did not act because of competing demands upon the police force. If such proof is in the case, the jury should be instructed that, with respect to the issue of competing demands, the jury may not disagree with the police deployment judgment unless it is palpably unreasonable. [at 480]
Wuethrich represented another special situation of an emergent and high risk nature to the public where it was held a municipality could be found to have a duty to act unless its omission was due to competing demands upon its police. In that case the police were notified that an individual was menacing people with a gun. The police did not even investigate the matter, and ultimately plaintiff's decedent was shot and killed. In this post-Tort Claims Act case the court held that the principles of Koppenal were incorporated in the act by N.J.S.A. 59:2-3(d) and denied a motion to dismiss holding that once the police had notice of a threat to take life they had a duty to investigate, for the omission of which liability could be found, recognizing of course that if competing demands prevented them from carrying out this duty to investigate, such a determination must be accepted unless palpably unreasonable.
Both of these cases, then, represent special circumstances with respect to emergent conditions holding a high degree of risk to the public. They have special application and were not intended to represent a general proposition of municipal liability for failure to act. See Koppenal, at 480. Nor should they be extended, for to do so would make municipalities *68 virtual insurers of all the unsafe conditions their inspections disclose.[2] They would be caught between the Scylla of making no inspections and the Charybdis of actively abating every failing which inspection uncovered  before harm resulted from that condition. Such a result would be unthinkable  short of legislative action which could provide a mechanism for responding to the liability at the same time the duty is created.
Its protestations to the contrary notwithstanding, third party plaintiff's claim in essence is for a failure to enforce the ordinance. The Legislature has expressly excluded such liability. N.J.S.A. 59:2-4.
As an alternative theory in support of its claim, third party plaintiff contends that a duty to correct the dangerous condition is created by N.J.S.A. 59:2-6.[3] Third-party plaintiff argues that the alleged failure to take positive steps to abate the violation and the dangerous condition was negligence "during the course of, but outside the scope of" the inspection conducted by the members of the Jersey City Fire Department.
This argument similarly must fail. The Legislature by N.J.S.A. 59:2-4 has immunized public entities from the consequences of a failure to enforce an ordinance. This legislatively-mandated immunity cannot be avoided by denominating the failure to enforce the ordinance as negligence *69 "during the course of, but outside the scope of" the inspection. Additionally it should be noted that the provision to N.J.S.A. 59:2-6 which third-party plaintiff relies upon undoubtedly refers to negligent acts of the inspectors which have nothing to do with the inspection but create harm: e.g., during an inspection an inspector negligently knocks a third party off a grating causing him injury, or during an inspection a door is negligently left open, causing a loss.
As noted, the complaint here is that third-party defendant failed to enforce a city ordinance. The Legislature has determined that this is not the kind of activity for which a municipality should be liable. To find liability by denominating it a negligent failure to carry out a ministerial function, or negligence during the course of an inspection but outside its scope, is to ignore the express provisions of N.J.S.A. 59:2-4. Where the Legislature has created a specific immunity the conduct thus immunized cannot create liability  no matter what the theory.
The third party defendant Jersey City's motion to dismiss is granted.[4]
NOTES
[1] To the extent that the third-party action represents a subrogation claim it is barred by N.J.S.A. 59:9-2(e) which in part provides: "No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee." Since a portion of the third-party plaintiff's claim may represent an uninsured excess and/or a deductible, the subrogation bar does not moot the matter.
[2] Thus violating the policy of the Tort Claims Act that inspections "are to be encouraged rather than discouraged by the imposition of civil tort liability." Comment to N.J.S.A. 59:2-6, Report of the Attorney General's Task Force on Sovereign Immunity, 214 (1972).
[3] N.J.S.A. 59:2-6 reads as follows:

"A public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property; provided, however, that nothing in this section shall exonerate a public entity from liability for negligence during the course of, but outside the scope of, any inspection conducted by it, nor shall this section exonerate a public entity from liability for failure to protect against a dangerous condition as provided in chapter 4."
[4] The immunity of the individual defendants under N.J.S.A. 59:3-5, a parallel provision to N.J.S.A. 59:2-4, has not been discussed because it is not before the court.