241 N.J. Super. 1 (1990)
574 A.2d 49
LINDA BOMBACE, AS GUARDIAN AD LITEM OF THE ESTATES OF HER INFANT CHILDREN, JOHN ANDALUZ, ANGELIQUE COTTO, LAVINIA BAEZ AND NATHENA BAEZ, PLAINTIFF-APPELLANT,
v.
THE CITY OF NEWARK, NEWARK FIRE DEPARTMENT, NEWARK CITY CODE ENFORCEMENT DEPARTMENT, AND COSMOS DECOSTA, DEFENDANTS-RESPONDENTS, AND LONNIE COLEMAN, JR., AND AKARA BARFIELD, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1990.
Decided May 11, 1990.
*2 Before Judges PRESSLER, LONG and GRUCCIO.
Richard M. Goldman argued the cause for appellant (Goldman & Goldman, attorneys; Vincent E. Ludwig, on the brief).
*3 Kathleen C. Goger, Assistant Corporation Counsel, argued the cause for respondents (Glenn A. Grant, Corporation Counsel, attorney).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This Tort Claims action arises out of a tragic 1984 fire which destroyed the Newark home of plaintiff Linda Bombace and took the lives of her four children, ages 5 to 16. She brought this action on her own behalf and on behalf of the children's estates, claiming that the fire was due, in substantial part, to the negligence of Newark officials, most notably Cosmos DeCosta, for which, she asserts, the City is responsible by reason of respondeat superior.[1] She appeals from the entry of summary judgment dismissing her complaint. We disagree with the trial judge's conclusion that the municipal defendants, beyond factual dispute, are entitled to immunity under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et seq. Accordingly, we reverse and remand for trial.
The building in which plaintiff lived with her children was a two-story duplex containing two apartments on each side of the house, one on each floor. Plaintiff had moved into one of the first-floor apartments in May 1983. Defendant Lonnie Coleman, the manager of the building, lived on the other side of the building. As we read the record, which includes extensive depositions, it appears that the building, and particularly plaintiff's apartment, was in deplorable, substandard condition, and that starting in August 1983, plaintiff made frequent complaints to the appropriate city officials respecting vermin infestation, absence and then inoperability of smoke detectors, and lack of central heating. Defendant DeCosta, an inspector employed by the City's Health and Welfare Department, had *4 inspected the premises at various times in response to these complaints, had issued violation notices, and had reinspected for abatements.
Plaintiff's negligence claim against the municipal defendants is based on two complaints which she made in October 1983. On October 20th, concerned about the inoperability of the smoke detector and exposed wires hanging from the ceiling, she contacted the neighborhood firehouse, and an inspector was dispatched to her apartment forthwith. He observed both problems and immediately issued a complaint and violation notice, which he then handed to Coleman, requiring their abatement within ten days. According to departmental procedure, the "field" documentation was required to be promptly transmitted to the central Fire Inspection Bureau for processing, reinspection, and whatever other follow-up action would be necessary or appropriate. For purposes of this motion, the City concedes that although the complaint, notice, and accompanying report were in fact sent the following day by the local firehouse to the Fire Inspection Bureau, the complaint was never "logged-in" and no action at all was ever taken. Apparently, the papers had been mislaid on arrival and were found in their pristine condition in the Bureau's office after the fire, which occurred during the early morning hours of February 26, 1984. It also appears that the smoke detectors remained inoperable from the date of the original violation notice. It is not alleged that defendant DeCosta was involved in these events respecting the inoperable smoke detector, although the record suggests that it was on account of an earlier inspection he had made that a smoke detector had been installed in the first instance.
The second gravamen of the complaint does involve DeCosta directly. On October 27, 1983, he inspected the apartment in response to plaintiff's complaint that no heat was being supplied. He verified the complaint and issued a complaint and violation notice. His report termed the no-heat situation an emergency. A municipal court hearing on the complaint was *5 scheduled for December 7, 1983. DeCosta reinspected the premises on December 6th preparatory to the hearing and found no abatement. The hearing was adjourned by either the court itself or the prosecutor until December 21, 1983. On the afternoon before the adjourned hearing, DeCosta again visited the premises for reinspection purposes. According to his deposition testimony, he found the door padlocked, thought he recollected that the apartment had been "made secure," and was told by Coleman that plaintiff and her children had moved out. He concluded that their removal constituted an abatement of the violation and so reported to the municipal court on the next day, requesting that the complaint be for that reason dismissed. It was. As a matter of fact, however, plaintiff had not moved, denied that the apartment had been secured, and denied that it was padlocked. Beyond that, she asserted that because of the intolerability of the lack of heat, she had asked DeCosta to advise her of the court hearing date so that she could appear and address the court if necessary. DeCosta never, however, gave her that information. It further appears that heat was not furnished up to the time of the fire, and the record provides support for the conclusion that the cause of the fire was directly related to that problem. Evidently, in order to heat the apartment, plaintiff used a portable electric heater and kept the gas oven on. Fire officials surmised that the fire was caused by contact between either of these heating sources and some flammable material.
Giving plaintiff the benefit of all favorable facts and inferences supported by the record, we are satisfied that the first of these asserted courses of negligent conduct, that relating to the lost report of the smoke detector violation, constituted negligence in the inspection of property or failure to enforce a law or both for which both the public entity and its employees are afforded absolute immunity by the Tort Claims Act. N.J.S.A. 59:2-4 and -6 and 59:3-5 and -7, respectively. We therefore *6 agree with the trial judge, for the reasons stated by him, that plaintiff's cause of action based on those events does not lie.[2]
We take, however, a different view respecting DeCosta's conduct in enforcing the no-heat complaint. The culpable conduct, if any, was, of course, his having procured the dismissal of the complaint by representing to the municipal court, contrary to fact, that the apartment had been abandoned and the tenants had removed therefrom. We are satisfied that this conduct falls not within N.J.S.A. 59:3-5, which applies to a failure to enforce a law and is an exact parallel of the immunity afforded to public entities themselves by N.J.S.A. 59:2-4, but rather that it is governed by N.J.S.A. 59:3-3, which has no public entity analogue and which provides in pertinent part that, "A public employee is not liable if he acts in good faith in the execution or enforcement of any law." (Emphasis added.) The good-faith precondition for immunity required by 59:3-3 distinguishes that section from all of the others applicable to the sequence of events here, and our review of the record satisfies us that there is a genuine dispute of material fact as to whether DeCosta acted in good faith in incorrectly reporting to the municipal court.
Before, however, addressing the good-faith issue both in definitional terms and in terms of the relationship between an employee's lack of good faith and the public entity's liability therefor, we consider further the relationship between 59:3-3 and 59:3-5 and our conclusion that the former governs here. As we have pointed out, 59:3-3 relates to "acts ... in the execution or enforcement of any law" whereas 59:3-5 refers to a "failure to enforce any law." In a scholarly and perceptive discussion of the difference between the two sections in Marley v. Palmyra Bor., 193 N.J. Super. 271, 473 A.2d 554 (Law *7 Div. 1983), Judge Haines started from the proposition that on its face the distinction appears to employ the now discredited, analytically unhelpful, and generally casuistical line-drawing between active and passive negligence, acts of commission and acts of omission, and misfeasance and nonfeasance. In order to retain the intended distinction drawn by the Act while at the same time conforming its application with currently accepted negligence principles, Judge Haines postulated these rules for determining which of the two sections applies:
(a) N.J.S.A. 59:3-3, providing immunity for the good faith enforcement of a law, applies only when an act has taken place with knowledge of the facts and the law. An "act" requires an external manifestation of the actor's will. "Knowledge" may be actual or required (imputed). Knowledge of facts is required when the actor has notice of circumstances which necessitate inquiry or from which she may be expected to draw appropriate inferences. Knowledge of the law is always required.
(b) N.J.S.A. 59:3-5, providing immunity for failure to enforce a law, applies when there is no "act," as defined in (a) above, even though the actor has or is required to have knowledge of the law or the facts or both.
(c) N.J.S.A. 59:2-4 must be read in the same way as N.J.S.A. 59:3-5.
(d) When there is no knowledge, actual or required, no duty arises and no question of immunity is involved. [193 N.J. Super. at 293, 473 A.2d 554]
We generally endorse this analysis and the reasoning on which it is based as both cogent and entirely consistent with the legislative purpose. See also Anela v. City of Wildwood, 595 F. Supp. 511, 514 (D.N.J. 1984). Beyond that, we are convinced that Judge Haines was eminently correct in concluding that, "When a sequence of events is involved, one enforcement event which constitutes an `act' will stamp the entire sequence as an `act' regardless of other events which involve failures to act." 193 N.J. Super. at 292, 473 A.2d 554. This court has, indeed, already relied on that proposition in determining which of the two sections is applicable to a given factual complex. See Morey v. Palmer, 232 N.J. Super. 144, 154, 556 A.2d 811 (App. Div. 1989).
We are persuaded that whether evaluated by Judge Haines' four-postulate construct or his "sequence of events" test, DeCosta's conduct in effectuating the termination of the municipal *8 prosecution constituted an act within the intendment of 59:3-3. Although considered most narrowly that act amounted to a failure to enforce, it nevertheless constituted a conscious decision to pursue a deliberatively determined course of action and was but the last, not an independent, step in a sequence of logically connected and causatively related affirmative acts which included the inspections, the reinspections, the issuance of violation notices, and the filing of a municipal court complaint. Arcane metaphysical debate aside, there can be no question that in this factual context, the affirmative step taken by DeCosta to terminate the municipal prosecution was part and parcel of his "enforcement of any law" within the prescription of 59:3-3.
The next question is whether there is a sufficient basis in this record to sustain a requisite factual dispute as to whether DeCosta acted in good faith in making his erroneous report of tenant removal to the court. In Marley v. Palmyra, supra, 193 N.J. Super. at 294, 473 A.2d 554, Judge Haines opted for a generally subjective test of good faith, namely, "honesty of purpose and integrity of conduct without knowledge, either actual or sufficient to demand inquiry, that the conduct is wrong." Subsequent to the decision in Marley, however, this court adopted an objective test, resting the determination of good faith on the objective reasonableness of the conduct in the circumstances. Brayshaw v. Gelber, 232 N.J. Super. 99, 109-111, 556 A.2d 788 (App.Div. 1989); Hayes v. Mercer County, 217 N.J. Super. 614, 621, 526 A.2d 737 (App.Div.), certif. den. 108 N.J. 643, 532 A.2d 226 (1987). Subscribing to the objective test, we are satisfied that the objective reasonableness of DeCosta's conduct in supplying the municipal court with dispositively erroneous information is open to question. By his own admission, he relied at least in part on the statement of the building manager, who had an adverse interest. Plaintiff denied the existence of a padlock. She had not been given the notice she had requested as the directly affected victim of the court date. She denied that the apartment had been in any way permanently *9 secured. And the fact is that she and her children were actually living there on the date of DeCosta's reinspection. Without speculating as to the reason or motive for DeCosta's report to the court, we cannot say that a reasonable jury would be precluded from concluding that, in the totality of the circumstances, it was not objectively reasonable.
Finally, we address the question of whether liability of DeCosta predicated on lack of good faith would necessarily exonerate the City from liability under N.J.S.A. 59:2-10, which protects a public entity from respondeat superior liability for the "acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." We think it plain that the absence of good faith and willful misconduct (or actual fraud) are not precisely congruent concepts, particularly in view of the objective standard we have ascribed to good faith. Clearly, one's conduct which is adjudged to be objectively unreasonable may warrant that characterization because of an underlying inattention, judgmental error, or other ordinary negligent behavior. Moreover, conduct may be objectively reasonable, that is, attended by good faith, even in the presence of negligence. Thus, as Judge Haines aptly noted in Marley, supra, 193 N.J. Super. at 295, 473 A.2d 554, the liability imposed by the Legislature under 59:3-3 prescribes a lesser standard of culpability than negligence since "public employees engaged in law enforcement" are protected against their negligence "so long as they act in `good faith'." Willful misconduct, on the other hand, denotes a degree of moral culpability substantially greater than the relative benignity of negligence; it implies "commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden. It is more than an absence of good faith." Id. at 294-295, 473 A.2d 554. Nevertheless, while not congruent, the two standards are also not mutually exclusive. It is up to the finder of fact to determine whether, in particular circumstances, conduct unattended by good faith is or is not also willful misconduct.
*10 Based on the foregoing analysis, we conclude that the record bespeaks material disputes of fact respecting both DeCosta's asserted immunity under N.J.S.A. 59:3-3 and the City's responsibility for his adjudicated liability under N.J.S.A. 59:2-10. These issues must now be tried.
Reversed and remanded for a new trial.
NOTES
[1] Plaintiff also joined the owner of the premises, Akara Barfield, and the resident manager, Lonnie Coleman. Both defaulted.
[2] In any event, even if that conduct were governed by our analysis herein of N.J.S.A. 59:3-3, it does not appear that there was any absence of good faith in the occurrence of these events.