593 A.2d 335

LINDA BOMBACE, AS GUARDIAN AD LITEM OF THE ESTATES OF HER INFANT CHILDREN, JOHN ANDALUZ, ANGELIQUE COTTO, LAVINIA BAEZ, AND NATHENA BAEZ, AND LINDA BOMBACE, INDIVIDUALLY, PLAINTIFF-RESPONDENT, v. THE CITY OF NEWARK, NEWARK FIRE DEPARTMENT, NEWARK CITY CODE ENFORCEMENT DEPARTMENT, AND COSMO DeCOSTA, DEFENDANTS-APPELLANTS, AND LON-NIE COLEMAN, JR., AND AKARA BARFIELD, DEFENDANTS.

Argued January 29, 1991—Decided August 7, 1991.

*Kathleen C. Goger,* Assistant Corporation Counsel, argued the cause for appellants (*Glenn A. Grant,* Corporation Counsel, attorney).

*Richard M. Goldman* argued the cause for respondents (*Goldman & Goldman,* attorneys; *Vincent E. Ludwig,* on the brief).

PER CURIAM.

Plaintiff Linda Bombace's four children, ages five through sixteen, perished in a tragic fire at their Newark apartment in the early morning of February 26, 1984. The fire was apparently caused by a stove or portable heater that the family used for heat due to the lack of central heat in the apartment.

Plaintiff brought a lawsuit against the landlord and the landlord's managing agent. She also sued the City of Newark (the City) and its employee under the Tort Claims Act (Act) (*N.J.S.A.* 59:1–1 to 59:12–3), claiming that the mishandling of violations complaints relating to inoperative smoke detectors and the lack of heating contributed to the tragedy. The municipal defendants asserted immunity from liability under the Act.

The Act provides municipalities and their employees with absolute immunity when the claimed liability is attributable to a failure to enforce any law. The Act also furnishes a qualified immunity, subject to good-faith conduct by the employee, when the claimed liability grows out of the execution or enforcement of any law. This appeal requires the Court to interpret and define those immunities and to determine whether under the factual circumstances they apply to the municipality and its employee.

I

Ms. Bombace and her children lived in a two-story building containing four apartments. The premises were owned by defendant Akara Barfield and managed by defendant Lonnie Coleman, Jr., who lived in the building. On October 20, 1983, plaintiff communicated with the Newark Fire Department about exposed wires and faulty smoke detectors in her apartment. Fire officers inspected the premises and found violations. They issued a violation notice to Coleman for "faulty electric" and "inoperable smoke detector." On the next day, the notice was sent to the Fire Inspection Bureau, but was never logged or recorded. After the 1984 fire, the notice was found lying on a table in the Inspection Bureau.

On October 26, 1983, plaintiff contacted the Newark Code Enforcement Bureau regarding the lack of heat in her apartment. The next day, defendant Cosmo DeCosta, an inspector from the bureau, inspected the premises and found that no heat was being supplied to the apartment. He issued a violation notice to Coleman. The heating-violation complaint was scheduled to be heard in Newark Municipal Court on December 7, 1983, but plaintiff was never notified of the court date. DeCosta reinspected the premises on December 6, 1983, and found that the violation had not been abated. However, the matter was adjourned, for reasons unknown to the parties, until De-

cember 21, 1983. Again, plaintiff was not notified of the court date.

On December 20, 1983, the day before the newly-scheduled hearing, DeCosta returned to reinspect the premises. According to DeCosta, the premises appeared vacant and secured. Coleman, the building manager, informed DeCosta that plaintiff and her family had vacated the premises.

The next day the heating violation matter against the landlord was called to be heard in Newark Municipal Court. DeCosta stated:

I went by there again this morning. It's sealed and boarded. That's the extent of it. They moved out on him. It's all secured and that was the end of it.

The court therefore dismissed the complaint. As noted, plaintiff had not been notified of either the original or the rescheduled court date.

According to plaintiff, she and her children had not vacated the premises, but rather still resided there, and the premises were not secured. (Although these facts are accepted for purposes of the summary judgment motion, several of plaintiff's neighbors noticed that her windows were boarded up and thought she had moved.) The apartment remained without heat.

The fatal fire occurred on February 26, 1984, during a cold spell. Fire officials attributed the fire to the use of the gas stove or a portable heater to keep warm and the resulting ignition of something flammable within the apartment.

Plaintiff brought wrongful death and survivor actions against Barfield, Coleman, the City of Newark, and DeCosta. Barfield and Coleman defaulted.

The gravamen of the complaint against the municipal defendants is that the fire was caused by their ineffective enforcement of the municipal laws governing smoke detectors and heat. With respect to the latter, plaintiff contended specifically that those defendants were liable because of the termination of the municipal-violations proceeding. In their motion for sum-

mary judgment, defendants contended that even if all of plaintiff's allegations were true, they were immune from liability under the New Jersey Tort Claims Act. The trial court agreed that defendants were immune from liability and granted their motion for summary judgment.

On appeal, with regard to liability for the lost report of the smoke-detector violation, the Appellate Division agreed with the Law Division that defendants were entitled to absolute immunity under the Act and that summary judgment was proper. 241 *N.J. Super.* 1, 5–6, 574 *A.*2d 49 (1990). With respect to the heat complaint, however, the Appellate Division determined that defendants were entitled only to qualified immunity under the Act and reversed the summary judgment for defendants on that claim, remanding it to determine whether the employee had acted in good faith. *Id.* at 10, 574 *A.*2d 49.

This Court granted defendants' petition for certification. 122 *N.J.* 358, 585 *A.*2d 368 (1990), seeking review of the Appellate Division's judgment that the Tort Claims Act does not absolutely immunize defendants with respect to the heat complaint.

## II

The Tort Claims Act grants an unqualified or absolute immunity to both public entities and their employees from liability for injuries caused by a failure to enforce the law. With respect to public employees, *N.J.S.A.* 59:3–5 provides: "A public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law." *N.J.S.A.* 59:2–4, the public entity analog to section 3–5, states: "A public entity is not liable for any injury caused by adopting or failing to adopt a law or by failing to enforce any law."

In contrast, *N.J.S.A.* 59:3–3 provides public employees with only qualified immunity with respect to the enforcement of the law: "A public employee is not liable if he acts in good faith in the execution or enforcement of any law."

The Act thus furnishes public entities and employees unqualified immunity for the "failure to enforce any law." It provides such employees with a qualified immunity, one that applies to "acts" done in the "execution or enforcement of any law," provided those "acts" are performed in good faith. Because a public entity generally will be liable, as would a private employer, for injuries proximately caused by its employees within the scope of the employment, *N.J.S.A.* 59:2-2, a public entity is derivatively entitled to the immunities afforded its employees.

The Act also provides an absolute immunity for public entities and employees with respect to injuries attributable to "inspections." That immunity applies to both the failure to inspect, *N.J.S.A.* 59:2-6, 3-7, and a negligent or inadequate inspection, *N.J.S.A.* 59:3-7. In this case, however, there has been no allegation that the City or its employees failed to make an inspection or made an inadequate or negligent inspection. Rather, with respect to the absence of heat to the apartment, plaintiff claims that the critical conduct of defendants consisted of the termination of the municipal court proceeding to enforce the heating violation. Also, with respect to the defective smoke detector, plaintiff asserts that the failure to follow up the violations notice was actionable.

The very narrow issue on this appeal is whether the discontinuance of a legal proceeding to enforce an ordinance concerning the absence of central heating constitutes either "failure to enforce any law" or "enforcement of any law."

The meaning encompassed by "failure to enforce a law" under *N.J.S.A.* 59:3-5 is not self-explanatory. The language itself reasonably suggests that the essential conduct constituting failure to enforce a law would consist of a failure to act, an omission, or non-action. That understanding is reinforced by a comparison of the language of the absolute immunity of section 3-5 with that of the qualified immunity of section 3-3, which applies to the "enforcement" of the law. The "good faith" that constitutes the basis for the qualified immunity refers express-

ly and specifically to "acts." *N.J.S.A.* 59:3–3. Further, although *N.J.S.A.* 59:3–3 uses the word "acts" in connection with the enforcement of the law, *N.J.S.A.* 59:3–5 makes no reference to "acts," but only to "injury." Thus, considerations of language and structure impel the inference that the absolute immunity of section 3–5 applies to non-action or the failure to act in connection with the enforcement of the law, and the qualified immunity of section 3–3 applies to acts constituting enforcement of the law.

The Appellate Division, relying on the analysis of the court in *Marley v. Borough of Palmyra,* 193 *N.J.Super.* 271, 473 *A.*2d 554 (Law Div.1983), recognized, as do we, that the critical distinction between the qualified, good-faith immunity of section 3–3 and the absolute immunity of section 3–5 is action as opposed to nonaction with respect to the enforcement of the law. 241 *N.J.Super.* at 6–7, 574 *A.*2d 49. As the court in *Marley* observed, section 3–3 applies "only when an act has taken place with knowledge of the facts and the law. An 'act' requires an external manifestation of the actor's will." 193 *N.J.Super.* at 293, 473 *A.*2d 554. By contrast, section 3–5 "applies when there is no 'act.'" *Ibid.*

The Appellate Division, despite acknowledging that the critical conduct that allegedly contributed to the fatal fire was DeCosta's termination of the municipal court hearing on the heating violation, refused to categorize that conduct as "failure to enforce any law," which would be immunized under section 3–5. Rather, it concluded as follows:

> Although considered most narrowly that act [DeCosta's termination of the municipal court proceeding] amounted to a failure to enforce, it nevertheless constituted a conscious decision to pursue a deliberately determined course of action and was but the last, not an independent, step in a sequence of logically connected and causatively related affirmative acts which included the inspections, the reinspections, the issuance of violation notices, and the filing of a municipal court complaint. Arcane metaphysical debate aside, there can be no question that in this factual context, the affirmative step taken by DeCosta to terminate the municipal prosecution was part and parcel of his "enforcement of any law" within the prescription of 59:3–3. [*Id.* 241 *N.J.Super.* at 8, 574 *A.*2d 49.]

The analysis undertaken by the Appellate Division of when conduct constitutes an "affirmative step" draws heavily from the *Marley* court, which stated that "[w]hen a sequence of events is involved, one enforcement event which constitutes an 'act' will stamp the entire sequence as an 'act' regardless of other events which involve failures to act." 193 *N.J.Super.* at 292, 473 *A*.2d 554.

The court in *Marley*, in positing the sequence-of-events construct, relied on but misinterpreted *Kelley v. Curtiss*, 29 *N.J.Super.* 291, 102 *A*.2d 471 (App.Div.), *rev'd on other grounds*, 16 *N.J.* 265, 108 *A*.2d 431 (1954). *Kelley* involved an action brought by a plaintiff who had been kicked by a horse. The horse, owned by the City of Newark and assigned to a police officer, had been tethered and left unattended in a driveway leading to a private parking lot where the plaintiff had left her car. The court there found that the officer's taking of the horse to the driveway, tethering it, and then leaving it there constituted affirmative acts. *Id.* 29 *N.J.Super.* at 299, 102 *A*.2d 471. In that context the court in *Kelley* stated, "The last event in that sequence may be non-action; but that does not render the prior act immune." *Id.* at 297, 102 *A*.2d 471. By that observation, *Kelley* suggested only that if a *prior* event was an act that could be the basis for liability, it would not be immunized because a *later* event itself might be immunized or might furnish no basis for liability. *Kelley* did not rule or intimate that if a prior event is itself immunized, it could render actionable a subsequent event that is otherwise immunized; nor did it suggest that if one law-enforcement act occurs in a sequence of events, all conduct in that sequence will constitute acts in the enforcement of the law.

Here, with respect to the absence of heat in the apartment, the Appellate Division referred to prior events, that is, to the municipal conduct preceding the termination of the municipal court action. That conduct consisted of "the inspections [and] reinspections," as well as the initiation of the violations proceedings. 241 *N.J.Super.* at 8, 574 *A*.2d 49. Plaintiff, how-

ever, did not claim that any of those acts had contributed to the tragic fire or is otherwise actionable, and indeed, the conduct relating to inspections is expressly immune from liability. *N.J.S.A.* 59:2–6, 3–7. Rather, she contended that there had been one critical, causative event giving rise to the harm she suffered, namely, the failure to have continued to prosecute the municipal court violations complaint.

■ Courts have impliedly, if not explicitly, recognized that if conduct giving rise to injury consists only of non-action or the failure to act in the enforcement of the law, it is entitled to absolute immunity, even though other antecedent or surrounding conduct might constitute acts or action that would otherwise be subject to the qualified immunity. Thus, in *Morey v. Palmer*, 232 *N.J.Super.* 144, 152–55, 556 *A.*2d 811 (App.Div. 1989), a police officer observed an intoxicated pedestrian staggering in the middle of the road, and ordered the pedestrian to leave the roadway, but did not thereafter take the pedestrian to an intoxication treatment facility. Several hours later, the pedestrian was struck and killed by a truck. The court ruled that the officer's decision not to remove the decedent to a treatment facility was protected under *N.J.S.A.* 59:3–5, although it alternatively ruled that the officer's prior conduct "ordering and escorting decedent off the roadway is a sufficient 'act' to secure the immunit[y] of *N.J.S.A.* 59:3–3...." 232 *N.J.Super.* at 154, 556 *A.*2d 811. In *Anela v. City of Wildwood*, 595 *F.Supp.* 511, 513–14 (D.N.J.1984), the court denied the plaintiffs' false imprisonment claim against the police chief and municipality, because the chief's conduct consisted only of the continuation of existing policies and did not constitute an "act"; hence, the absolute immunity of section 3–5, rather than the more limited immunity of section 3–3, applied. See *Garry v. Payne*, 224 *N.J.Super.* 729, 736, 541 *A.*2d 293 (App.Div.1988) (public defendants absolutely immune from liability for harm from fires caused by code violations: "the essence of the [State's] alleged duty arising from [its affirmative act] is bottomed in the underlying failure to inspect"); *Bosch v. Hain,*

184 *N.J.Super.* 204, 445 *A.*2d 465 (Law Div.1982) (public defendants absolutely immune from liability for harm from fires caused by code violations); *National Spring Co. v. Pierpont Associates*, 146 *N.J.Super.* 63, 368 *A.*2d 973 (Law Div.1976) (same). *Cf., e.g., Brayshaw v. Gelber*, 232 *N.J.Super.* 99, 108–10, 556 *A.*2d 788 (App.Div.1989) (applying section 3–3 to defamation action against prosecutor for prosecutor's comments to press); *Wood v. City of Linden*, 218 *N.J.Super.* 11, 17–18, 526 *A.*2d 1093 (App.Div.1987) (applying section 3–3 where police officers rammed police vehicle into vehicle of fleeing suspect, injuring passenger).

This analysis is exemplified by the reasoning of the Appellate Division in this case with respect to the claim relating to the smoke-detector violation. The Appellate Division correctly stated that "the first of these asserted courses of negligent conduct, that relating to the lost report of the smoke detector violation, constituted negligence in the inspection of property or failure to enforce a law or both for which both the public entity and its employees are afforded absolute immunity by the Tort Claims Act." 241 *N.J.Super.* at 5, 574 *A.*2d 49. We note, however, that plaintiff actually claimed not that the inspection had been performed negligently, but that the City had failed to follow up on that inspection. Thus, the inspector had accurately discovered the inoperative smoke detector, issued a violation notice to the building manager, and sent a report to the Fire Inspection Bureau. Those prior events, even though they consist of "acts," were not relied on as a basis for liability. Moreover, they were immune because they consisted of inspections under *N.J.S.A.* 59:3–7. Thus, to repeat, such conduct in a sequence of events will not convert a subsequent non-action or failure to act into affirmative acts governed by the good-faith immunity of section 3–3.

There is, in addition, reasonable support grounded in public policy for the legislative distinction between acts and failure to act, between action and non-action, as the basis for governmental immunity. The objective of the absolute immunity of sec-

tion 3-5, and its counterpart, section 2-4, is to protect government from liability for its failure to enforce a law. Such a failure would most often, if not invariably, occur when a person's harm arises out of a code violation or a breach of law that would be directly attributable to someone else's wrongful acts; the government's failure to act or non-action would be only an indirect contributing cause of the harm. *See, e.g., Garry v. Payne, supra,* 224 *N.J.Super.* 729, 541 *A.*2d 293; *National Spring Co. v. Pierpont Associates, supra,* 146 *N.J.Super.* 63, 368 *A.*2d 973; *Bosch v. Hain, supra,* 184 *N.J.Super.* 204, 445 *A.*2d 465. In that context, the victim would at least have a principal wrongdoer from whom to seek redress.

Moreover, the focus on the failure to enforce the law as the basis for absolute immunity is consistent with the legislative declaration in *N.J.S.A.* 59:1-2 that "the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done." The failure to enforce may, as in this case, frequently be related to the duty to inspect. To narrow the immunity for the former may weaken the immunity accorded the latter. "This [unqualified] immunity is essential in light of the potential and existing inspection activities engaged in by public entities for the benefit of the public generally. These activities are to be encouraged rather than discouraged by the imposition of civil liability." Comment to *N.J.S.A.* 59:2-6.

The history of the Act further supports our approach. Following this Court's decision in *Willis v. Department of Conservation & Economic Development,* 55 *N.J.* 534, 537-41, 264 *A.*2d 34 (1970), which overruled the centuries-old common-law doctrine of sovereign immunity in tort, the Act was clearly intended to reestablish a system in which immunity is the rule, and liability the exception. *See Kolitch v. Lindedahl,* 100 *N.J.* 485, 491 n. 4, 492 & n. 5, 497 *A.*2d 183 (1985); *Malloy v. State,* 76 *N.J.* 515, 518-19, 388 *A.*2d 622 (1978); *N.J.S.A.* 59:1-2; J. Fitzpatrick, *Government Tort Liability in New Jersey* 6-23

(1986). In construing the Act, this Court has respected that legislative policy to establish immunity as the general rule. *E.g., Rochinsky v. State,* 110 *N.J.* 399, 407–08, 541 *A.*2d 1029 (1988).

We appreciate that the tort law provides redress for those who have been wronged. *Peoples Express Airlines v. Consolidated Rail Corp.,* 100 *N.J.* 246, 254–55, 495 *A.*2d 107 (1985). Absolute immunity, of course, tends to undermine that goal. *See Harlow v. Fitzgerald,* 457 *U.S.* 800, 813–14, 102 *S.Ct.* 2727, 2736, 73 *L.Ed.*2d 396, 407–08 (1982); *Merenoff v. Merenoff,* 76 *N.J.* 535, 388 *A.*2d 951 (1978). We have recognized that immunities can be molded to accommodate the competing interests of affected parties. *E.g., Weinberg v. Dinger,* 106 *N.J.* 469, 524 *A.*2d 366 (1987); *Foldi v. Jeffries,* 93 *N.J.* 533, 461 *A.*2d 1145 (1983). Indeed, the Legislature has done so with respect to immunities under the Tort Claims Act. The absolute immunity conferred by section 3–5 does not apply with respect to egregious misconduct or conduct beyond the scope of employment. *N.J.S.A.* 59:3–14. Legislative choice is implicated in this case as well. Private persons, namely, defendants Barfield and Coleman, harmed plaintiff by breaching their duty to provide fire detection and central heat for the apartment. Plaintiff's claims against the public defendants is that they failed to prevent that harm from occurring. Plaintiff can and did seek recovery from the owner and manager of the premises. We are not free to disagree with the legislative perception that when, as in this case, a plaintiff's claim is that the government failed to prevent someone else from harming her, redress must be sought from the private wrongdoer and not the public.

In sum, application of the absolute immunity under the Act is determined by whether the critical causative conduct by government employees consists of non-action or the failure to act with respect to the enforcement of the law. We conclude that the conduct of the municipal defendants in terminating the enforcement proceedings relating to the heating violation con-

stitutes such non-action or failure to enforce the law and falls within the absolute immunity of section 3-5.

Our determination obviates any consideration or resolution of the meaning of "good faith" for purposes of section 3-3. We, nonetheless, note that the Appellate Division, in applying section 3-3, defined good faith as "the objective reasonableness of the conduct in the circumstances." 241 *N.J.Super.* at 8, 574 *A.*2d 49. We are constrained to point out that generally our decisional law allows immunity under section 3-3 if the public employee can show either objective or subjective good faith. *E.g., Hayes v. Mercer County,* 217 *N.J.Super.* 614, 622, 526 *A.*2d 737 (App.Div.1987) (adopting objective good faith standard with respect to section 3-3 but recognizing that subjective good faith "remains available to a public employee as a second line of defense").

### III

We conclude that defendants City and DeCosta are entitled to summary judgment on both of plaintiff's claims. Accordingly, we reverse the judgment of the Appellate Division regarding the heat complaint.

*For reversal in part*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.