**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2767
_____

THE ESTATE OF DIAMOND SMITH, by her Administrator Ad Prosequendum, Scott
A. Krasny, Esquire; MASCEO EMANUEL, IV, minor sibling, by Guardian Ad Litem,
Scott A. Krasny, Esquire; SA'MIYAH EMANUEL, minor sibling, by Guardian Ad
Litem, Scott A. Krasny, Esquire,

                                                            Appellants

v.

THE STATE OF NEW JERSEY DIVISION OF CHILD PROTECTION AND
PERMANENCY ("DCPP"), formerly known as the Division of Youth and Family
Services (DYFS); STATE OF NEW JERSEY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES ("DCF"); ALLISON BLAKE, PH.D., L.S.W. in her official and
personal capacity as Commissioner of the Department of Children and Families;
DEBORAH AUGUSTUS, Division Worker, in her official and personal capacity;
TINA WILLIAMS, Division Worker, in her official and personal capacity;
STEPHANIE HOLLIDAY, DCPP Case Worker, in her official and personal capacity;
DOMINIQUE SMITH; MASCEO EMANUEL, III; JOHN/JANE DOES 1-100;
JOHN/JANE DOES SUPERVISORS 1-100; JOHN/JANE DOES CASEWORKERS 1-
100; ABC COMPANY 1-100; XZY CORPORATION 1-10; LOTUS MEDICAL CARE,
also known as LOTUS MEDICAL CARE, also known as LOTUS MEDICAL CENTER;
JOHN/JANE DOES A-Z (Fictitious Names); VEDAT OBUZ; LOTUS CLINICS PC;
M.D. ZAHID HUSAIN; M.D. TAJWAR AMIR; FNP NATHALIE GEORGES;
APNC SHAFEA MORRISON; RAKSHANDA KHAN
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-14-cv-06432)
District Judge: Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 24, 2023

_____

Before: HARDIMAN, KRAUSE and MATEY, *Circuit Judges*

(Filed: March 21, 2023)
_____

OPINION[*]
_____


MATEY, *Circuit Judge*.

Five-year-old Diamond Smith was killed by her father. Diamond's Estate and two

of Diamond's siblings (together "Plaintiffs") sued the State of New Jersey Department of

Children and Families and the Division of Child Protection and Permanency (together

"Department"), and Department Caseworkers Tina Williams and Deborah Augustus

(together "Caseworkers").[1] The complaint claimed violations of state and federal law

stemming from alleged errors, oversights, and omissions by the Department and

Caseworkers in their supervision of Diamond's care. We agree with much of the District

Court's analysis, including the conclusion that there was no constitutional violation and

that the Department and Williams enjoy absolute immunity under New Jersey law. But

we hold that Augustus is not, on the present facts, immune from the state tort claims. So

we will reverse the decision in part.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Claims against other parties were either voluntarily dismissed or are not at issue on this appeal. We consider only the matters in the District Court's certified judgment.

## I.

Diamond's short life was dominated by cruelty and abuse. She was born to Dominique Smith in May 2007, just a few days after Dominique and Diamond's brother were placed in foster care. A few years later, Dominique and her children moved in with Diamond's father Masceo Emanuel, III ("Emanuel"). While living with them, Emanuel was twice charged with domestic violence. Once, he dragged Dominique outside and threatened to burn the house down. Dominique sought a temporary restraining order alleging that he had assaulted her in front of the children. On the second occasion, Emanuel choked Dominique. He pleaded guilty to assault and was placed on probation.[2]

In March 2012, a probation officer visited Dominique's home after Emanuel failed to appear for an appointment. During the visit, a neighbor advised the officer that he regularly heard Diamond's parents beating their child. That same day, the Caseworkers were assigned to investigate the claim of abuse, using a state-generated "Screening Report" detailing the family's history of criminal charges and domestic violence.[3] Williams interviewed Diamond at the family's home, and Diamond denied any abuse, stating her punishment for misbehavior was to stand in the corner. But Diamond's six-year-old brother told the Caseworkers that his parents hit him with a belt. And Dominique admitted that she and Emanuel would strike both children on the hand.

---

[2] Emanuel also had a son with another woman. That child was placed in foster care for a time until he was returned to his mother.

[3] The Screening Report noted that Emanuel was on probation for assault and that he had a history of domestic violence. The Report also stated that the family was known to the state system.

Emanuel also acknowledged the neighbor's noise reports but chalked the sound up to "rough sex" with Dominique. The entire visit, which included a home safety assessment revealing a tidy home with food and working utilities, lasted about ninety minutes. In the days after the visit, Augustus referred Dominique for an assessment with a domestic violence specialist, but Dominique declined any services after speaking with the counselor. Augustus also contacted Diamond's brother's schoolteacher, who was unaware of any abuse. She also contacted Diamond's pediatrician's office, which reported no injuries or signs of abuse during an office visit a few months earlier.

Augustus then completed a Family Risk Assessment Report summarizing her work. As a part of the report, caseworkers are required to access a state database containing criminal history records for the household members. Caseworkers must also search a second database showing past and present family involvement with the Department. Based on those inquiries, caseworkers note relevant past events in their report, such as whether the family had any prior abuse investigations or whether the household had prior involvement with the Department. *See Est. of Diamond Smith v. N.J. Div. of Child Prot. & Permanency*, No. 3:14-cv-06432, at *8 (D.N.J. Aug. 18, 2021). Each factor has a pre-assigned number, and the sum determines the level of risk to the child.

Augustus never completed the required searches before filling out the report. Yet she reported that Diamond's family had no prior abuse investigations, had not received child protective services, had no more than one incident of domestic violence in the past 12 months, and that the caregivers had no prior criminal convictions. All incorrect and,

4

without that information, Augustus's report produced an assessment score of "1," corresponding to a "low" risk. *Id.* With the approval of her supervisor, Augustus closed the investigation on April 20, 2012, concluding that the allegations of child abuse were unfounded. She transferred out of the investigations unit the same day.

Three months later, Diamond was dead at the hands of Emanuel. An autopsy revealed multiple scars and bruising across her body from repeated abuse. Emanuel was sentenced to twenty-five years' imprisonment after pleading guilty to aggravated manslaughter and Dominique was sentenced to eight years' imprisonment after pleading guilty to child endangerment. The Department investigated the incident and subjected Augustus, Williams, and their supervisor to disciplinary action.

Plaintiffs sued, bringing federal and state civil rights and tort claims. The District Court granted summary judgment for the State Defendants, and later certified its order as a final judgment. Plaintiffs now appeal.[4]

## II.

Plaintiffs raise two points of error. First, they argue the Department and Caseworkers created the danger that led to Diamond's death, violating their rights to Due Process. Second, they argue the Caseworkers are not protected by absolute immunity

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331 and § 1367. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment *de novo*, drawing all reasonable inferences in favor of the non-moving party. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). Only disputes over facts that might affect the outcome under the law preclude summary judgment. *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 93 (3d Cir. 2018).

because their actions constituted willful misconduct. We will affirm the District Court's decision on both points, except as to the state tort claims against Augustus.

## A.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a Constitutional right or a law of the United States by a person acting under the color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc).[5] "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause" because the Due Process Clause "was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196–97 (1989) (citation omitted). We have carved out two exceptions to this general rule—when the State has a preexisting special relationship with a person, *see D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1369 (3d Cir. 1992) (en banc), or when the State created the danger, *see Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). *See generally Johnson v. City of Philadelphia*, 975 F.3d 394, 399–400 (3d Cir. 2020).

We have held a special relationship may exist when the State takes physical custody of a child, such as when a child is in state-regulated foster care, or in a living arrangement "sufficiently analogous to a foster care placement." *Nicini*, 212 F.3d at 809;

---

[5] Violations of substantive due process under the New Jersey State Constitution are evaluated under this same standard. *See Brown v. State*, 165 A.3d 735, 743 (N.J. 2017).

*see also D.R. by L.R.*, 972 F.2d at 1370. And the state-created danger exception may apply when state authority is "employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or she would have been in the absence of state intervention.'" *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (quoting *Schieber v. City of Philadelphia*, 320 F.3d 409, 416 (3d Cir. 2003)). But in any case, the plaintiff must show "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Id.* (citation omitted). Merely failing to act, without more, is insufficient. *See id.* at 282; *D.R. by L.R.*, 972 F.2d at 1370; *DeShaney*, 489 U.S. at 202–03.

As the District Court explained, Diamond's care falls outside these narrow exceptions. At the time of her death, Diamond was not in State custody and had not been for over a year. The Caseworkers' actions—investigating the home, speaking with the children and parents, and following up with doctors and a teacher—did not change the circumstances in Diamond's household or make Diamond more vulnerable. And while the Caseworkers' actions may not have been diligent, they are not so "ill-conceived or malicious that [they] 'shock[ed] the conscience.'" *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Although "[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case," "actions that are merely negligent" are not enough. *Id.* Any alleged failure to act by ending the investigation into the family does not render the State responsible for the

7

abuse Diamond suffered. So the § 1983 claims fail against all State Defendants.[6] The substantive due process claims under the New Jersey State Constitution fail for the same reasons.

**B.**

The New Jersey Tort Claims Act includes a defense of absolute immunity shielding State employees from liability "for an injury caused by his. . . failure to enforce any law." N.J. Stat. Ann. § 59:3-5; *see also Bombace v. City of Newark*, 593 A.2d 335, 341 (N.J. 1991) (per curiam). "[A]pplication of . . . absolute immunity under the Act is determined by whether the critical causative conduct by government employees consists of non-action or the failure to act with respect to the enforcement of the law." *Bombace*, 593 A.2d at 341. If the conduct falls within the statute, the state employee receives absolute immunity unless "his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J. Stat. Ann. § 59:3-14. The Plaintiffs argue all the Defendants acted with willful misconduct.

But willful misconduct requires "'much more' than mere negligence." *Alston v. City of Camden*, 773 A.2d 693, 702 (N.J. 2001) (quoting *Fielder v. Stonack*, 661 A.2d 231, 242 (N.J. 1995)). It must imply a knowing "reckless disregard" for the consequences of the act or omission. *Id.*; *see also Dep't of Child. & Families, Div. of Child Prot. & Permanency v. E.D.-O.*, 121 A.3d 832, 845 (N.J. 2015).

---

[6] Although Plaintiffs originally alleged violations of both substantive and procedural due process, their Opening Brief is solely focused on substantive due process. Plaintiffs therefore forfeited any appeal of the District Court's dismissal of the procedural due process claim.

As the District Court held, that standard shields the Department, the Commissioner, and Williams. Declining to take further action by closing the investigation based on Augustus's report "constitutes such non-action or failure to enforce the law [as to] fall[] within the absolute immunity" of N.J. Stat. Ann. § 59:3-5. *Bombace*, 593 A.2d at 341. With no evidence of willful misconduct, the District Court correctly dismissed the state claims against these Defendants.

The same cannot be said for Augustus. On the present record, her actions constituted more than mere negligence and rose to the level of willful misconduct, removing any protection from liability. In the Risk Assessment Form, Augustus affirmatively represented (by checking boxes on the form) that the family had no prior abuse investigations, had not received child protective services, had no more than one incident of domestic violence in the past 12 months, and the caregivers had no prior criminal convictions. Augustus admitted that she did not gather the information necessary to make those claims. She did not consult state databases that, contrary to her representations, would have revealed that Diamond's parents had a long history of criminal and domestic violence and prior involvement with the Department. That would have resulted in a higher risk assessment. Augustus was on notice from the Screening Report that Diamond's father was on probation for assault and that there was a history of domestic violence. Yet she affirmatively represented false information, the truth of which could be obtained only by conducting or consulting the required searches, with reckless disregard for the consequences.

Augustus not only failed to follow protocol but also represented that she had. That is enough to deny her motion for summary judgment because, on the undisputed facts at this stage of the proceedings, her actions go beyond mere negligence. *Compare Fielder*, 661 A.2d at 245 (finding summary judgment was not warranted when there was dispute over whether an officer's conduct constituted willful misconduct when, considering the facts in the light most favorable to the nonmoving party, the officer may have knowingly violated department policy), *with Bombace*, 593 A.2d at 340–41 (granting summary judgment to state employees when enforcement proceedings were terminated after the problem had been "accurately discovered," a violation notice had been issued, and a report had been sent). Because the present record reflects willful misconduct under N.J. Stat. Ann. § 59:3-14, Augustus cannot receive the protection of absolute immunity under N.J. Stat. Ann. § 59:3-5. However, as we have observed in similar situations where immunity is denied "[b]ased on those facts, which are undisputed for purposes of summary judgment," it remains the case that "if different facts come out at trial, the [defendant] may again raise . . . immunity." *Mack v. Yost*, No. 21-2472, slip op. at 5 (3d Cir. Mar. 21, 2023). For today's purposes, we will reverse the District Court's grant of summary judgment for Augustus on Plaintiffs' tort claims and remand for further proceedings consistent with this opinion.

### III.

For these reasons, we will affirm in part, reverse in part, and remand.

10