NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4339-18
              A-4344-18
              A-4492-18

JENNIFER BUDDY,

       Plaintiff-Appellant,

v.

JONATHAN E. KNAPP,
COUNTY OF ATLANTIC,
and BOROUGH OF FOLSOM,

       Defendants,

and

STATE OF NEW JERSEY,
and WAWA, INC.,

       Defendants-Respondents.
_____

CORRINE BUDDY, GENERAL
ADMINISTRATRIX AND
ADMINISTRATRIX AD
PROSEQUENDUM FOR THE
ESTATE OF LOUIS J.
BUDDY, JR., deceased,

       Plaintiff/Appellant-
       Third Party-Defendant,

v.

**APPROVED FOR PUBLICATION**

**August 17, 2021**

**APPELLATE DIVISION**

JONATHAN E. KNAPP,
COUNTY OF ATLANTIC,
and BOROUGH OF FOLSOM,

Defendants,

and

STATE OF NEW JERSEY,
and WAWA, INC.,

Defendants/Third-Party
Plaintiffs-Respondents.

_____

DAMIEN CONNEEN,

Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
NEW JERSEY DEPARTMENT
OF TRANSPORTATION,
and WAWA, INC.,

Defendants-Respondents,

and

ADAMUCCI ASSOCIATES, LLC,

Defendant.

_____

Argued October 26, 2020 – Decided August 17, 2021

Before Judges Sabatino, Gooden Brown, and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket Nos. L-1037-16, L-1046-16, and L-1049-16.

Ernest L. Alvino argued the cause for appellant Jennifer Buddy in No. A-4339-18 (Hoffman DiMuzio, attorneys; Ernest L. Alvino and Ryan S. Hoffman, on the joint briefs).

Anthony Granato argued the cause for appellant Corrine Buddy, General Administratrix and Administratrix Prosequendum for the Estate of Louis J. Buddy, Jr., in No. A-4344-18 (Jarve Kaplan Granato Starr, LLC, attorneys; Anthony Granato, on the joint briefs).

Andrew J. Rossetti argued the cause for appellant Damien Conneen in No. A-4492-18 (Rosetti & Devoto, PC, attorneys; Andrew J. Rossetti and Anthony J. Medori, of counsel and on the briefs).

Katherine Herr Solomon (Mauro Lilling Naparty, LLP) of the New York bar, admitted pro hac vice, argued the cause for respondent WaWa, Inc., in No. A-4339-18, No. A-4344-18, and No. A-4492-18 (Mauro Lilling Naparty, LLP, attorneys; Caryn L. Lilling, on the briefs).

Robert McGuire, Deputy Attorney General, argued the cause for respondents State of New Jersey and New Jersey Department of Transportation in No. A-4339-18, No. A-4344-18, and No. A-4492-18 (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Michael R. Sarno, Deputy Attorney General, on the briefs).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.,

These appeals, which we consolidate solely for the purposes of this opinion, arise from two motor vehicle accidents that occurred about a year apart in approximately the same location under similar circumstances. In both instances, a driver traveling westbound on Route 322 in Folsom Borough made an illegal left turn in the direction of one of two driveway entrances to a WaWa convenience store and struck a motorcycle traveling eastbound on the highway. In the first accident, the motorcycle driver was killed and his wife, who was a passenger, seriously injured. In the second accident, the motorcycle driver was seriously injured. The injured parties and the estate of the decedent filed suits against the entity that owns the convenience store and the State, which owns the highway and the land on which the store's driveway entrances are situated, alleging a number of claims sounding in negligence.

Plaintiffs appeal orders of the Law Division granting summary judgment to defendants. The court concluded that the convenience store owner did not owe a duty of care to the injured parties and, further, that the State is immune from plaintiffs' claims under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 13-10. Plaintiffs also appeal an order denying their motion to consolidate their complaints. We affirm.

A-4339-18

I.

Defendant WaWa, Inc. (WaWa) owns and operates a convenience store on Route 322, also known as Black Horse Pike, in Folsom at the intersection of Cains Mill Road. The intersection is controlled by a traffic signal. At the location of the store, Route 322 is a four-lane State highway with two eastbound and two westbound lanes separated by two sets of solid double yellow lines. The speed limit is fifty-five miles per hour.

The store is located on the eastbound side of the highway and is east of the intersection. There are two driveway entrances to the store's parking lot on the eastbound side of the highway. It is illegal for westbound vehicles to make a left turn and cross the double yellow lines and the eastbound lanes to access the driveway entrances to the WaWa. See N.J.S.A. 39:4-82.1 ("[w]henever any highway has been divided into two roadways by leaving a[] . . . clearly indicated dividing section so constructed so as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway and no vehicle shall be driven over [or] across . . . any such dividing . . . section, except through an appropriate opening . . . or at a cross over or intersection established by public authority.").

Approximately four cars east of the WaWa, on the other side of the highway, a vehicle traveling westbound encounters the entrance to a jug

5                                                                      A-4339-18

handle. The jug handle allows vehicles to navigate the Cains Mill Road intersection with Route 322. The westbound driver can use the jug handle to enter Cains Mill Road and, when the light permits, cross Route 322 and turn eastbound on the highway, where, a few car lengths from the intersection the driver can access the WaWa driveway entrances.[1]

When the collisions occurred, there was a sign on the westbound side of Route 322 east of the WaWa and near the entrance to the jug handle stating, "ALL TURNS FROM RIGHT LANE." The sign is intended to restrict vehicle movements to prevent left turns across the highway at and before the intersection with Cains Mill Road.

The WaWa driveway entrances were constructed in 1969-1970 and are in the State's right-of-way. It is unclear if a permit was issued for their construction. However, the driveway entrances are considered to have been constructed in accordance with DOT regulations by virtue of N.J.A.C. 16:47-8.3(a) ("[a]ll driveways and streets in existence prior to September 12, 1992, shall be considered grandfathered and to have been constructed in accordance with the provisions of this chapter, if no permit was issued."). WaWa is not

---

[1] The WaWa parking lot also has a driveway entrance off Cains Mills Road, a two-lane road with a break in the yellow lines that allow a vehicle approaching the store from the intersection with Route 322 to make a left turn into the parking lot. This provides a second method for westbound traffic on Route 322 to safely enter the parking lot.

authorized to modify the driveway entrances or place any signage regulating traffic without permission from the State.

On May 17, 2014, defendant Jonathan E. Knapp was operating a pick-up truck westbound on Route 322. Knapp attempted to make an illegal left turn from the westbound lanes of the highway into one of the WaWa driveway entrances. As he accelerated to cross the eastbound lanes, Knapp struck an eastbound motorcycle operated by Louis J. Buddy, Jr. Plaintiff Jennifer Buddy, Louis's wife, was a passenger on the motorcycle.[2] Both were ejected from the motorcycle. Jennifer sustained multiple injuries and was flown by helicopter to a trauma center for treatment. Louis was pronounced dead at the scene. The crash occurred in the eastbound lanes of the highway.

Knapp was issued motor vehicle summonses for careless driving, N.J.S.A. 39:4-97, and making an improper turn across a divided highway, N.J.S.A. 39:4-82.1. He acknowledged his awareness at the time of the accident of the jug handle two to four car lengths east of where he turned. He stated, however, that he thought it was permissible to make a left turn into any operating business.

---

[2] Because the Buddys share a last name, we refer to them by their first names. No disrespect is intended.

A-4339-18

Nearly a year later, on May 5, 2015, Angelina Casella was operating a car westbound on Route 322. Casella attempted to make an illegal left turn to enter the other driveway entrance of the WaWa. A video surveillance recording shows Casella's vehicle in the eastbound lane when it was struck by an eastbound motorcycle operated by plaintiff Damien Conneen. Conneen was thrown from the motorcycle as a result of the crash and sustained serious injuries. Casella was issued motor vehicle summonses for careless driving, N.J.S.A. 39:4-97, and making an improper turn across a divided highway, N.J.S.A. 39:4-82.1. Neither Knapp nor Casella identified any aspect of the driveway entrances that induced them to attempt to make their illegal turns across opposing highway traffic.[3]

On May 13, 2016, Jennifer filed a complaint in the Law Division naming Knapp, the State, and Wawa as defendants. On the same date, plaintiff Corrine Buddy, Administratrix for Louis's Estate (the Estate), filed a complaint in the

---

[3] Plaintiffs and the State submitted briefs stating that Knapp and Casella were traveling eastbound, the motorcycles were traveling westbound, and the store is located on the westbound side of the highway. WaWa's brief, the trial court opinion, police reports, and expert reports in the record indicate Knapp and Casella were traveling westbound, the motorcycles were traveling eastbound, and the store is located on the eastbound side of the highway. We proceed on the assumption that the directions of travel and location of the store were inadvertently switched in the briefs submitted by plaintiffs and the State.

Law Division naming Knapp, the State and WaWa as defendants.[4]  The trial court consolidated the two Buddy complaints.  On May 16, 2016, Conneen filed a complaint in the Law Division naming the State and WaWa as defendants.[5]

Plaintiffs allege Wawa was negligent in creating unsafe driveway entrances to its parking lot and in failing to maintain the premises in a safe condition for the welfare and protection of its commercial invitees.  They allege WaWa knew or should have known that a dangerous condition – driveway entrances that attract illegal left turns from Route 322 – existed in the State's right-of-way and posed a danger to its customers.  Plaintiffs allege WaWa should have redesigned its parking lot entrances to discourage left turns, notified the State of the dangerous condition, and/or warned its customers of the dangers of making an illegal left turn from the westbound lanes of the highway.

Plaintiffs allege the State was negligent in creating an unsafe condition by failing to properly maintain the roadway in a safe condition and to exercise

---

[4]  Jennifer and the Estate also named Atlantic County and Folsom Borough as defendants.  The claims against those defendants are not before the court.

[5]  Conneen also named the State Department of Transportation (DOT) as a defendant.  We refer to the State and DOT collectively as "State."  Conneen alleged claims against defendant Adamucci Associates that are not before us.

proper control, supervision, maintenance, repair, and general safekeeping of the roadway, despite the fact that it knew or should have known that a dangerous condition existed in the roadway and in its right-of-way. Plaintiffs seek compensatory and punitive damages for their injuries.

Conneen moved pursuant to Rule 4:38-1(a) to consolidate his complaint with the Buddy complaints. Jennifer and the Estate joined his motion.

On March 6, 2019, the trial court issued a written opinion denying the motion. The court found that the Buddy and Conneen matters did not involve the same underlying transaction or common issues of fact because they arose from different motor vehicle accidents that occurred a year apart. In addition, the court noted that the accidents involved drivers heading to different driveway entrances, a significant distinction because the experts whose reports were submitted on then-pending summary judgment motions based their opinions on the driveways' distances from the Cains Mill Road intersection. The court also found that because the Buddy accident resulted in a death and the Conneen matter concerned solely injuries, proof of damages at trial would be meaningfully different. Finally, the court concluded that the facts in the Buddy cases would be "highly prejudicial" to the defendants in the Conneen case, as the jury would likely assume defendants were on notice of the

allegedly dangerous condition.  A March 6, 2019 order memorializes the court's decision.

The parties also cross-moved for summary judgment.  Plaintiffs relied on two access management[6] experts, Phillip Demosthenes and Christopher Huffman, P.E., whose qualifications are not disputed.  Huffman opined that Wawa violated State regulations, industry standards, and company policy by designing and maintaining a site plan that placed access connections within the functional intersection area of a four-lane highway, and in a way that failed to control, if not eliminate, left turns into or out of the parking lot.  He identified an accident at the site on February 22, 2012, which he found to be "very similar" to the Buddy and Conneen accidents, as well as other accidents in the area of the driveway entrances.  He reasoned that once a pattern of left-turn crashes involving vehicles entering or exiting the parking lot to Route 322 occurred, Wawa should have taken steps to reconfigure its parking lot and driveway entrances for the benefit and safety of its customers.

Demosthenes opined that the State created dangerous conditions on its property through unsafe access areas, in violation of its existing regulations

---

[6] "Access management (AM) is the proactive management of vehicular access points to land parcels adjacent to all manner of roadways."  Federal Highway Administration, <u>What Is Access Management?</u> (Feb. 15, 2017), https://ops.fhwa.dot.gov/access_mgmt/what_is_accsmgmt.htm.

A-4339-18

and industry standards. He opined that the driveway entrances do not meet current safety standards and that the State failed to follow its procedures when it did not inspect and remedy the dangerous conditions, including closing both driveway entrances along Route 322, when it engaged in improvement projects in the area of the store in 1993 and 2010. He concluded that the Buddy and Conneen crashes were caused by the dangerous conditions the State allowed to persist.

The State submitted an expert report from an engineer who opined that the cause of the accidents were Knapp's and Casella's decisions to make an illegal left turn to access the driveway entrances. According to the expert, the drivers failed to give meaning and purpose to traffic control devices in place on Route 322, such as signals, striping, and signage, intended to prevent vehicles from making a left turn across two lanes of opposing traffic. The expert concluded that if Knapp and Casella had obeyed the "rules of the road" and used the jug handle to access the WaWa parking lot the accidents would not have happened.

WaWa's engineering expert reached the same opinion, concluding that Knapp and Casella caused the accidents by violating motor vehicle laws and disregarding the jug handle. In addition, he opined that WaWa had no duty to provide signage or prohibitive measures to prevent illegal turns by motorists

on the highway because the "striped median prohibits these movements" as provided by N.J.S.A. 39:4-82.1.

The court also considered the deposition testimony of Marta Harrison, the general manager of the store since 2012. She testified that she used the jug handle to access the Wawa because she believed that making left turns into the store from the westbound lanes of Route 322 was "not safe." She noted the "double yellow lines" and "a sign" indicating that all turns should be made from the jug handle and stated that "[i]t seem[ed] safer to [her] to follow the law and rules." Harrison stated that she was not tasked with monitoring motorists who might access the parking lot by making an illegal left turn on the highway.

Wawa argued it did not owe plaintiffs a duty of care with respect to the design of the driveway entrances. In addition, it asserted that the driveway entrances were not dangerous conditions and that the actions taken by Knapp and Casella were illegal, unnecessary to enter the parking lot, and did not comport with the intended use of the driveway entrances. Wawa also argued the record contains no proof it invited drivers to make an illegal turn across the highway to access its property and further submitted that there was a legal means to access the store parking lot for westbound drivers on Route 322 through use of the jug handle. WaWa argued it did not have a duty to enforce

13                                                                A-4339-18

traffic laws on a public roadway and that the State controls regulation of the driveway entrances on its property.

The State argued it was entitled to immunity for all claims asserted against it under three provisions of the TCA: (1) law enforcement immunity, N.J.S.A. 59:2-4, for an alleged failure to enforce its regulations; (2) licensing immunity, N.J.S.A. 59:2-5, for any permitting decision, or alleged absence thereof, related to the driveway entrances; and (3) inspection immunity, N.J.S.A. 59:2-6, for any alleged failure to inspect the driveway entrances. In addition, the State argued the statutory exception to immunity for dangerous conditions of public property did not apply because the driveway entrances were not dangerous conditions, use of the driveway entrances with due care did not create a reasonably foreseeable risk of the injuries suffered by plaintiffs, and the State did not act in a palpably unreasonable manner in failing to ameliorate any such risk if it existed.

On May 7, 2019,[7] the trial court issued a written opinion granting summary judgment to defendants on all claims. The court rejected plaintiffs' arguments that WaWa violated a duty of care to plaintiffs. The court found

---

[7] Each trial court order resolving the parties' summary judgment motions is dated May 7, 2019, and refers to an accompanying written memorandum of decision. The written memoranda of decision, however, are dated May 8, 2019, but were uploaded to the court's electronic filing system on May 7, 2019.

that Knapp's and Casella's acts, which were the cause of the accidents, and the collisions, happened in the eastbound lanes of Route 322 and not on WaWa's property. Noting long-established precedents that a commercial landowner has no duty to regulate or control the conditions of property it does not own, the court found that WaWa did not owe a duty to plaintiffs related to the accidents.

The court recognized, however, that in limited circumstances a commercial landowner's duty to protect its invitees may extend beyond its premises for activities from which it directly benefits. The court found that it was reasonable to conclude that Wawa could have received an economic benefit from drivers accessing its parking lot by making an illegal left turn from the highway. However, the court concluded that westbound drivers were provided a safe path to enter the parking lot through the jug handle, relieving WaWa of any duty to take steps to prevent illegal left turns into its driveway entrances. Lastly, the court found that even if the driveway entrances were dangerous conditions of State property, WaWa had no legal duty to report those conditions to government entities with the authority to remedy them.

The court concluded that the State is absolutely immune from liability pursuant to N.J.S.A. 59:2-4, for its alleged failure to enforce its regulations, N.J.S.A. 59:2-5, for permitting decisions concerning the driveway entrances, and N.J.S.A. 59:2-6, for its failures to inspect the driveway entrances. The

15

court also concluded that the statutory exception to immunity for dangerous conditions of public property was inapplicable. As the court explained,

> [t]he placement of the driveways does not constitute a dangerous condition . . . because if drivers exercise due care, the subject accidents would not be reasonably foreseeable. Route 322 is divided by double solid yellow lines prohibiting left turns into the subject driveways. Clearly, illegally crossing the highway to make the left turn is not exercising due care. If motorists were exercising due care by utilizing the designated . . . jug handle to access the Wawa, accidents such as these would not be reasonably foreseeable.

On May 7, 2019, the court entered orders granting summary judgment in favor of the State and against plaintiffs on all claims alleged.

Jennifer, the Estate, and Conneen appealed from the May 7, 2019 orders and the March 6, 2019 order denying consolidation. We thereafter consolidated the appeals for briefing and argument.

Plaintiffs raise the following arguments.

> POINT I[8]
>
> THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO PLAINTIFFS AND GRANTING IT TO WAWA BECAUSE WAWA MAINTAINED A DANGEROUS CONDITION WITHIN THE SCOPE OF INVITATION AND INJURY WAS REASONABLY FORESEEABLE.

---

[8] The point headings have been modified for ease of reading.

POINT II

THE TRIAL COURT ERRED WHEN IT FAILED TO FIND A SEPARATE DUTY ON WAWA TO PROVIDE SAFE PASSAGE FOR THE PUBLIC IT INVITED ONTO ITS PROPERTY THROUGH A DANGEROUS DRIVEWAY SYSTEM.

POINT III

THE TRIAL COURT OVERLOOKED WAWA'S DUTY TO REMEDY THE DANGEROUS CONDITION AND IMPROPERLY SHIFTED THE BURDEN OF NOTICE FROM WAWA TO THE STATE.

POINT IV

THE TRIAL COURT'S DECISION TO DISMISS WAWA SOLELY BASED ON TWO "ALTERNATE PATH" CASES RESTS UPON LEGAL AND FACTUAL ERRORS WHICH UNFAIRLY PUNISH INNOCENT PLAINTIFFS AND REWARD A CULPABLE COMMERCIAL OCCUPIER.

POINT V

THE COURT ERRED IN GRANTING THE STATE SUMMARY JUDGMENT BY RELYING UPON THREE STATUTORY IMMUNITY PROVISIONS WHICH DO NOT APPLY.

POINT VI

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING CONSOLIDATION FOR TRIAL.

## II.

When reviewing an order granting summary judgment, we apply the same standard used by the trial court.  Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016).  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).

> [W]hether there exists a 'genuine issue' of material fact that precludes summary judgment requires the [court] to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged dispute issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).]

In the absence of genuine issues of material fact, we must "decide whether the trial court correctly interpreted the law."  DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).  We review issues of law de novo, according no deference to the trial court's legal conclusions.  Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

18

## III.

We begin with plaintiffs' challenge to the trial court's entry of summary judgment in favor of WaWa. "To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). Plaintiffs allege Wawa had a non-delegable duty as a commercial property owner to provide customers with safe driveway entrances to its parking lot or to warn them of the dangers of making an illegal left turn from the westbound lanes of Route 322 to enter the parking lot.

Our focus is on the first required element: the presence of a legal duty. The existence and scope of a duty is a legal question for the court. Estate of Desir v. Vertus, 214 N.J. 303, 322 (2013). We review a trial court's determination of that question de novo. Broach-Butts v. Therapeutic Alternatives, Inc., 456 N.J. Super. 25, 33 (App. Div. 2018), certif. denied, 236 N.J. 606 (2019).

"We are not bound by the opinion of plaintiffs' expert that the recognition of such a duty is legally required" because "'[a]n expert's opinion on a question of law is neither appropriate nor probative.'" Est. of Campagna v. Pleasant Point Props., LLC, 464 N.J. Super. 153, 171 (App. Div. 2020)

19

(quoting Kamienski v. State, 451 N.J. Super. 499, 518 (App. Div. 2017)), certif. denied, 245 N.J. 585 (2021). The "actual imposition of a duty of care and the formulation of standards defining such a duty derive from considerations of public policy and fairness." Vertus, 214 N.J. at 322 (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 438 (1993)).

While "[t]here is no bright line rule that determines when one owes a legal duty," Badalamenti v. Simpkiss, 422 N.J. Super. 86, 94 (App. Div. 2011), in examining "[w]hether a person [or entity] owes a duty of reasonable care toward another," courts must assess

> whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors – the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. The analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct.
>
> [Hopkins, 132 N.J. at 439 (citations omitted).]

While "[f]oreseeability of injury to another is important, [it is] not dispositive" as "[f]airness, not foreseeability alone, is the test.'" Vertus, 214 N.J. at 325 (internal quotations omitted).

Plaintiffs' claims are based on principles of premises liability. "The proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation." Butler v. Acme Markets, Inc., 89 N.J. 270, 275 (1982). The landowner has a "general common law duty to business invitees – to maintain its premises in a condition safe from defects that the business is charged with knowing or discovering . . . ." Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 311 (2010).

We agree with the trial court's conclusion that WaWa owed no duty to plaintiffs because their injuries did not occur on WaWa's premises. Knapp and Casella collided with plaintiffs' motorcycles in the eastbound lanes of Route 322. Although the drivers were headed in the direction of an entrance to the WaWa parking lot, they initiated their illegal left turns on State property and caused injuries to plaintiffs before reaching WaWa's property. Under the general rule, premises liability does not apply here.

With respect to off-premises injuries, "a premises owner owes a duty of care to one injured off premises if the source of the injury is a dangerous condition on the premises and if the injury is the result of a foreseeable risk to an identifiable person." Vertus, 214 N.J. at 318 (emphasis added). For

21

example, in Olivo v. Owens-Illinois, Inc., 186 N.J. 394, 404-05 (2006), the Court found that an employer owed a duty of care to its employee's wife who was exposed to and injured by asbestos carried home from the employer's premises on the employee's clothing. Although off-premises liability has been extended in limited circumstances, we see no basis in the record for such an extension in this instance.

The holding in Kuzmicz v. Ivy Hill Apartments, Inc., 147 N.J. 510 (1997), is instructive on this point. The plaintiff in Kuzmicz "took a shortcut along a winding path through [an] unlighted and wooded lot" owned by a board of education on his way from a shopping plaza to an apartment complex where he was a tenant. Id. at 512. He chose this path over a "lighted sidewalk run[ning] from the shopping plaza to the apartment complex" and entered the apartment complex property through a hole in a fence dividing the properties. Ibid. The apartment complex manager testified that he "was aware that tenants and employees used the path to go to the shopping plaza . . . ." Id. at 513. While on the board of education's property, the plaintiff was stabbed. Id. at 512.

The plaintiff sued the apartment complex owner, alleging it breached a duty of care to him by not mending the fence to discourage use of the path

A-4339-18

through the wooded lot or by warning him of the risk of assault on the board's property, which had a history as the situs of illegal activity. Id. at 511-12.

In Kuzmicz, the Court held that the apartment complex owner owed no duty of care to the plaintiff. It began its analysis by observing that "[t]he issue is whether, 'in light of the actual relationship between the parties under all of the surrounding circumstances,' the imposition of a duty on the landowner is 'fair and just.'" Id. at 515 (alteration in original) (quoting Brett v. Great Am. Recreation, 144 N.J. 479, 509 (1996)). The Court noted that "[c]ritical to the imposition of liability is a direct economic benefit to the commercial landowner from the path taken by the injured party and the absence of an alternative route." Id. at 519.

The Court found that a duty of care did not arise because nothing in the record supported the conclusion that the apartment complex owner benefitted economically from the tenants' use of the off-premises path, id. at 521, and the apartment complex owner did not have possession of, or a right to control, the property where the assault took place, id. at 517. In addition, the Court found that the unrepaired fence opening did not create a duty on the part of the apartment complex owner because it provided its tenants with a safe passage to the public sidewalk to get to the shopping plaza. Id. at 522. The plaintiff's

23

election to take a shorter, unsafe path for his convenience was not the fault of the apartment complex owner. Ibid.

The Court further held that the apartment complex manager's "awareness of criminal activity on the Board's property does not suffice to impose liability on [the apartment complex] for that activity." Id. at 521. The Court reasoned that the plaintiff "was injured not because [the apartment complex] failed to exercise due care on its property, but because the Board and others failed to prevent criminal activity on the Board's property." Ibid.

Similarly, in MacGrath v. Levin Properties, 256 N.J. Super. 247 (App. Div. 1992), we affirmed the grant of summary judgment in favor of a shopping center owner based on a finding that it did not owe a duty of care to a patron who was injured off premises. In that case, the plaintiff was struck by a car after she left the shopping center and attempted to cross Route 22, an adjacent State highway, on foot at a vehicle entrance driveway to the shopping center. Id. at 250. We rejected her claim that the shopping center owner owed her a duty to create a safe pedestrian passage across the highway or to warn her of the dangers of crossing the highway on foot. We reasoned that

> [j]ust as no one could reasonably suggest that the owner of commercial property owes a duty to pedestrians crossing the street to keep an abutting paved road in repair, it cannot be fairly suggested that the owner owes a duty to protect the [plaintiff] from the obvious hazards of the abutting highway. Liability

24

rests with the State, if there exists a dangerous condition in the public way which caused the accident, or with the operator of the vehicle whose negligence caused the injuries to the [plaintiff].

[Id. at 253 (citation and internal quotation marks omitted).]

We concluded that extending a duty to the shopping center owner merely because patrons use an adjoining public highway to access its property "would impose a similar duty upon all proprietors owning property abutting a public street who enjoy the 'benefit' of traffic access from the street to their business enterprises." Id. at 255.

In light of these precedents, we agree with the trial court's conclusion that WaWa did not have a duty of care to plaintiffs to prevent the illegal acts of Knapp and Casella on State property. Wawa neither owns nor has control over the eastbound lanes of Route 322, where Knapp and Casella attempted to execute their illegal turns and collided with the plaintiffs' motorcycles. In addition, the driveway entrances, which plaintiffs allege to be dangerous conditions, are not on WaWa's premises. They are situated in the State's right-of-way and are subject to its sole control. Thus, an often crucial element of off-premises liability – an on-premises dangerous condition – is not present here.

We also agree with the trial court's conclusion that any economic benefit to WaWa from customers making an illegal left turn into the driveway entrances is insufficient to create a legal duty.  See Pote v. City of Atlantic City, 411 N.J. Super. 354, 368 (App. Div. 2010) (rejecting the argument that economic benefit "automatically translates into a corresponding duty to protect [the defendant's] patrons from the hazards of the public thoroughfare").  There is no support in the record for plaintiffs' claim that WaWa invited drivers to make an illegal turn to enter its parking lot and nothing in the record suggests WaWa relied on patrons to make illegal left turns to generate income necessary to operate the store.  In addition, the record clearly establishes that a safe alternative route existed for westbound drivers to access WaWa's driveway entrances.  The absence of an alternative route is "critical" to off-premises liability.  Kuzmicz, 147 N.J. at 519.

We are not persuaded by plaintiffs' argument that WaWa, aware through its manager of the dangerous nature of left turns into its driveway entrances, should be charged with a duty to change its parking lot design or report to the State the need to alter or close the driveway entrances.  Such a holding – in the absence of specific conduct by the landowner enticing motorists to make illegal turns – would amount to an expansion of a duty to all commercial landowners along a State highway to prevent motor vehicle violations by

26

potential customers and ameliorate the effects of those violations. That outcome would be unworkable and unfair, particularly in light of regulations prohibiting private property owners from controlling vehicular traffic without State approval.

Nor do we see support in the record for plaintiffs' argument that WaWa breached a duty to warn its customers of the dangers of making an illegal left turn from the westbound lanes of the highway. It is not clear how such a warning would be delivered to drivers who had not yet reached the store, as was the case here. In addition, we decline plaintiffs' invitation to impose on commercial property owners the obligation to warn business patrons of the obvious danger posed by driving over two sets of solid yellow lines to cross two lanes of opposing traffic on a highway with a fifty-five-mile-per-hour speed limit.

We also agree with the trial court's finding that WaWa did not violate its duty to address dangerous conditions on its property for the reasons discussed in greater detail below. In light of our conclusion that WaWA had no duty of care to plaintiffs, we need not address whether it breached any such duty or whether that breach was the proximate cause of plaintiffs' injuries.

27

IV.

We turn to the trial court's entry of summary judgment in favor of the State. "Generally, immunity for public entities is the rule and liability is the exception." Fleuhr v. City of Cape May, 159 N.J. 532, 539 (1999). "[P]ublic entities shall only be liable for their negligence within the limitations of" the TCA. N.J.S.A. 59:1-2. The requirements of the TCA are "stringent" and place a "heavy burden" on plaintiffs seeking to establish public entity liability. Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 136 (1993). We examine, in turn, the statutory immunities the trial court concluded barred plaintiffs' claims.

Pursuant to N.J.S.A. 59:2-4, "[a] public entity is not liable for any injury caused by adopting or failing to adopt a law or by failing to enforce any law." See Bombace v. City of Newark, 125 N.J. 361, 366 (1991) (holding that the TCA "grants an unqualified or absolute immunity to both public entities and their employees from liability for injuries caused by a failure to enforce the law."). "[A]pplication of the absolute immunity under [N.J.S.A. 59:2-4] is determined by whether the critical causative conduct by government employees consists of non-action or the failure to act with respect to the enforcement of the law." Lee v. Brown, 232 N.J. 114, 127 (2018). Put simply, "if conduct giving rise to injury consists only of non-action or the failure to act

28                                                        A-4339-18

in the enforcement of the law, [the public entity] is entitled to absolute immunity, even though other antecedent or surrounding conduct might constitute acts or action that would otherwise be subject to the qualified immunity." Bombace, 125 N.J. at 370; see Lee, 232 N.J. at 128 (noting that public employees are entitled only to qualified immunity when they are enforcing the law pursuant to N.J.S.A. 59:3-3).

The critical causative conduct plaintiffs allege resulted in their injuries is the State's alleged inaction in enforcing its regulations related to access violations from public roadways by failing to close the WaWa driveway entrances or otherwise preventing motorists from making illegal left turns to access the parking lot. As the conduct complained of relates to the State's alleged omissions, rather than affirmative acts, we agree with the trial court's conclusion that enforcement immunity under N.J.S.A. 59:2-4 applies. The State cannot be held liable for damages for its alleged failure to apply existing or past regulatory requirements to WaWa's driveway entrances.

N.J.S.A. 59:2-5, the licensing immunity provision, states as follows:

> [a] public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit . . . or similar authorization where the public entity . . . is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.

A-4339-18

Immunity under N.J.S.A. 59:2-5 "is pervasive and applies to all phases of the licensing function, whether the governmental acts be classified as discretionary or ministerial." Malloy v. State, 76 N.J. 515, 520 (1978). As the Court explained,

> [l]icensing activity is a vital exercise of governmental authority. In this State there are literally millions of licenses, certificates, permits and the like applied for, issued, renewed or denied. It is inevitable that with such a staggering volume of activity, mistakes, both judgmental and ministerial, will be made. The purpose of the immunity is to protect the licensing function and permit it to operate free from possible harassment and the threat of tort liability.
>
> [Id. at 521.]

Plaintiffs argue the trial court erred when it applied this provision because a condition precedent to licensing immunity is the State's issuance of a license or other approval. There is no evidence in the record that the State issued a permit for the construction of the driveway entrances in 1969-70. We agree, however, with the State's argument that even if it did not grant a permit or other form of approval at the time of construction, the driveway entrances were implicitly approved by statute in 1992. See City of Linden v. Benedict Motel Corp., 370 N.J. Super. 372, 390-91 (App. Div. 2004) (explaining that "N.J.S.A. 27:7-92a requires access permits for anyone seeking access to a State highway, but protects or 'grandfathers' access 'in existence prior to

January 1, 1970,' as if a permit had been issued."). Thus, with respect solely to the issue of the State issuance of an approval for the construction of driveway entrances and its alleged failure to revoke that approval in later years, plaintiffs' claims are barred by N.J.S.A. 59:2-5.

We acknowledge the State's licensing immunity does not insulate it from liability for a dangerous condition on State property. See Ball v. New Jersey Bell Tel. Co., 207 N.J. Super. 100 (App. Div. 1986). However, as is discussed at length below, we agree with the trial court's conclusion that dangerous condition liability, as defined by N.J.S.A. 59:4-2, is inapplicable here.

N.J.S.A. 59:2-6, the inspection immunity provision, states that

> [a] public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property; provided, however, that nothing in this section shall exonerate a public entity from liability for negligence during the course of, but outside the scope of, any inspection conducted by it, nor shall this section exonerate a public entity from liability for failure to protect against a dangerous condition as provided in [N.J.S.A. 59:4-2].

The statute unambiguously contradicts plaintiffs' argument that the trial court erred when it granted inspection immunity because the State did not inspect the driveway entrances, and notice their alleged non-compliance with current regulations, during improvement projects along Route 322 in 1993 and 2010.

31

We agree with the trial court's conclusion that the State is not subject to liability due to a dangerous condition of its property created by the driveway entrances. N.J.S.A. 59:4-2 provides:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a.    a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b.    a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [N.J.S.A. 59:4-2.]

N.J.S.A. 59:4-1(a) defines a dangerous condition as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." In order to pose a "'substantial risk of injury' a condition of property cannot be minor, trivial, or insignificant. However, the defect cannot be

viewed in a vacuum. Instead, it must be considered together with the anticipated use of the property . . . . " <u>Atalese v. Twp. of Long Beach</u>, 365 N.J. Super. 1, 5 (App. Div. 2003). "[A] dangerous condition of property may be found to exist when an unreasonable risk of harm is created by the combination of a defect in the property itself and the acts of third parties." <u>Longo v. Aprile</u>, 374 N.J. Super. 469, 474-75 (App. Div. 2005) (alteration in original) (quoting <u>Roe by M.J. v. N.J. Transit Rail Operations, Inc.</u>, 317 N.J. Super. 72 (App. Div. 1998)).

N.J.S.A. 59:4-3 provides:

> a. A public entity shall be deemed to have actual notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> b. A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

We agree with the trial court's conclusion that the absence of due care by Knapp and Casella when using the driveway entrances is determinative of whether the dangerous condition exception applies. "If a public entity's property is dangerous only when used without due care, the property is not in a

33

'dangerous condition.'" Garrison v. Twp. of Middletown, 154 N.J. 282, 287 (1998). "When the property poses a danger to all users," however, "an injured party may establish that property was in a dangerous condition notwithstanding his or her failure to exercise due care." Id. at 292.

The test to assess whether those involved in bringing about an injury to another were exercising due care is two-fold. Once a dangerous condition is found to exist, a court must determine: (1) "whether the property poses a danger to the general public when used in [a] normal, foreseeable manner," and (2) "whether the nature of the . . . activity is 'so objectively unreasonable' that the condition of the property cannot reasonably be said to have caused the injury." Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001). The Garrison Court explained that use of the subject public property must be "objectively reasonable from the community perspective" to be considered as used "with due care." 154 N.J. at 291. The Court also clarified that "'used with due care' refers not to the conduct of the injured party, but to the objectively reasonable use by the public generally." Ibid. Accordingly, whether a member of the public acted with due care on public property depends on whether the property was used in a reasonably foreseeable manner.

The record supports the trial court's conclusion that the driveway entrances did not pose a substantial risk of injury when used with due care in a

manner in which it is reasonably foreseeable that it will be used. The driveway entrances are not intended to be used for illegal left turns by westbound drivers on Route 322. Breaking the law by crossing two sets of yellow lines to cross two lanes of opposing highway traffic to access the driveway entrances is not the exercise of due care. The risk of danger created by such highly dangerous maneuvers is objectively unreasonable and inconsistent with the intended use of the driveway entrances, which are designed to permit eastbound motorists to enter the WaWa parking lot.

For these same reasons, we reject plaintiffs' argument that WaWa breached its duty to ameliorate dangerous conditions on its property. A commercial enterprise "must exercise reasonable care for an invitee's safety," which "includes making reasonable inspections of its property and taking such steps as are necessary to correct or give warning of hazardous conditions or defects actually known to the landowner." Monaco v. Hartz Mountain Corp., 178 N.J. 401, 414 (2004) (citing Hopkins, 132 N.J. at 434). In this vein, a commercial "landowner is liable to an invitee for failing to correct or warn of defects that, by the exercise of reasonable care, should have been discovered." Id. at 414-15. As explained above, the driveway entrances are not dangerous conditions when used with due care for their intended purpose and are not on WaWa's property.

To the extent we have not specifically addressed any of plaintiffs' remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

In light of our conclusions, we affirm the May 7, 2019 orders granting summary judgment to the State and against plaintiffs on all claims.[9]  We recognize the tragic nature of these accidents caused by law-breaking drivers, but discern no legal basis to impose liability on the defendants before us.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9]  Because we affirm the trial court's summary judgment orders, we need not address its March 6, 2019 order denying Conneen's motion to consolidate.

A-4339-18